## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DYLAN HALL, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>         v.<br><br>J. CAIAZZO PLUMBING & HEATING CORP. and MICHAEL CAIAZZO, in his individual and professional capacities,<br><br>         Defendants. | Civil Case No.: 1:21-cv-05416<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dylan Hall ("Hall" or "Plaintiff"), by and through his attorneys, Faruqi & Faruqi, LLP, and on behalf of himself and others similarly situated, hereby alleges as follows against Defendants J. Caiazzo Plumbing & Heating Corp. ("JCPH" or the "Company") and Michael Caiazzo ("Caiazzo") (together, "Defendants"):

## NATURE OF THE CLAIMS

1.     Defendants own and operate JCPH, a plumbing and heating company in Brooklyn, New York that  specializes in the installation, service, and repair of plumbing and heating units in residential and commercial properties throughout the five boroughs of New York City and Long Island.

2.     Defendants engage in a common, willful, and deliberate policy and practice of failing to pay Plaintiff and other similarly situated Employees (defined *infra* at ¶ 30) overtime wages.

3.     Specifically, Defendants require Employees to drive Company-issued trucks to each of their assignments and return the trucks to Defendants' shop located in Brooklyn, New York (the "Shop") after they complete their shifts and clock out.

1

4.      However, Defendants fail to pay Employees any wages for this compensable, off-the-clock work.

5.      Employees typically spend 30 to 90 minutes driving back to the Shop to return the Company's trucks and tools at the end of their shifts without compensation.

6.      Given that Employees are typically scheduled to work 40 to 48 hours per week, the additional off-the-clock work results in the unlawful denial of approximately 2.5 to 9 hours of overtime wages which should have been paid to Employees at a rate of one and one-half time their regular rates of pay.

7.      Additionally, Defendants improperly deduct parking and traffic tickets from Employees' wages.

8.      Defendants have also consistently failed to furnish their Employees with Notices of Pay Rate and accurate wage statements, as required by law.

9.      Plaintiff's claims against Defendants to redress these wrongs are brought, in part, under the Fair Labor Standards Act ("FLSA") as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of himself and all other similarly situated Employees employed by Defendants at any time during the full statute of limitations period.

10.     Plaintiff's claims are also brought, in part, under the New York Labor Law ("NYLL"), and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated Employees employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights

under the FLSA.

12.    The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State law pursuant to 28 U.S.C. § 1367.

13.    Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

**A.    Plaintiff Dylan Hall**

14.    Hall is a resident of Brooklyn, New York and was employed by Defendants from in or around mid-December 2017 through on or around July 16, 2021.

15.    At all relevant times, Hall was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**B.    Defendant J. Caiazzo Plumbing & Heating Corp.**

16.    JCPH is a domestic corporation with its principal place of business located at 1381 Utica Avenue, Brooklyn, New York 11203.

17.    At all relevant times, JCPH controlled and directed the terms of employment and compensation of Plaintiff and all others similarly situated.

18.    At all relevant times, JCPH established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiff and all others similarly situated.

19.    At all relevant times, JCPH maintained and exercised its power to hire, fire, discipline, and promote Plaintiff and all others similarly situated.

20.     At all relevant times, JCPH was an "employer" within the meaning of all applicable statutes and regulations.

**C.     Defendant Michael Caiazzo**

21.     Caiazzo owns and operates JCPH and is a resident of New York City.

22.     At all relevant times, Caiazzo controlled and directed the terms of employment and compensation of Plaintiff and all others similarly situated.

23.     At all relevant times, Caiazzo maintained control, oversight, and direction of Plaintiff and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiff and all others similarly situated.

24.     At all relevant times, Caiazzo maintained and exercised his power to hire, fire, discipline, and promote Plaintiff and all others similarly situated.

25.     At all relevant times, Caiazzo was an "employer" of Plaintiff and all others similarly situated within the meaning of all applicable statutes and regulations.

**FACTS**

**A.     Background**

26.     Defendants own and operate JCPH, a plumbing and heating company in Brooklyn, New York.

27.     Defendants specialize in the installation, repair, and service of plumbing and heating units for commercial and residential properties throughout the five boroughs of New York City and Long Island.

28.     Defendants employ a staff of approximately 20 to 30 employees at any given time, and own and operate approximately eight trucks.

29.     Employees are required to use Defendants' trucks to travel to and complete jobs throughout New York City and Long Island to which Defendants assign them.

30.     Employees hold various titles, including, *inter alia*, Plumbing Mechanics and Helpers (together, "Employees").

31.     Defendants typically schedule Employees to work from either 6:00 a.m. to 3:00 p.m. or from 7:00 a.m. to 4:00 p.m. (including a one-hour unpaid lunch) five to six days per week during each pay period, for a total of 40 to 48 hours per week.

32.     Each pay period spans from Saturday through Friday.

33.     Employees typically work 42.5 to 57 hours per week, which includes the 2.5 to 9 hours spent driving Defendants' trucks back to the Shop at the end of their shifts, as Defendants require of Employees.

34.     The services Employees render—namely, the installation, repair, and service of plumbing and heating units—is an integral part of Defendants' business of installing, repairing, and servicing plumbing and heating units.

35.     Employees' relationships with Defendants are permanent insofar as they typically work exclusively for Defendants over extended periods of time.

36.     Defendants require Employees to use trucks, tools, and other equipment provided by Defendants.

37.     Defendants dictate Employees' rates of pay and hours worked.

38.     Defendants maintain control and oversight over the quality of Employees' work.

39.     Employees have no opportunity for profit or loss, as they are paid the same hourly wage irrespective of the income generated by their work or Defendants' overall profits.

40.     Employees perform routine tasks that require little training.

41.    Employees exercise little to no initiative, judgment, or foresight in open market competition with others to ensure their success, as they work exclusively for Defendants and for a fixed hourly wage.

42.    For example, Employees do not independently advertise or market their services.

43.    On a similar note, Employees do not operate their own businesses independently of Defendants.

**B.    <u>Time Shaving</u>**

44.    Throughout the statutory period, Defendants have utilized a timekeeping system in which Employees clock in and out to track the number of hours they work each week.

45.    When Employees arrive to work each morning, they clock in, as reflected on timecards located in the Shop, and receive their assignments from Defendants.

46.    Employees then drive trucks provided by Defendants to the locations of their various assignments.

47.    At the end of their shifts, Employees are required to call JCPH to notify the Company that they have completed their shifts before driving back to the Shop.

48.    Employees are required to return Defendants' trucks to the Shop at the end of each shift.

49.    After a given Employee calls JCPH at the end of a shift—and before the Employee returns Defendants' truck to the Shop—Defendants clock Employees out for the day, as reflected on timecards located in the Shop.

50.    In the event an Employee fails to call Defendants, Defendants are nonetheless able to determine when Employees complete their shifts based on software installed in each truck.

51.     Indeed, Defendants outfit each truck with software that tracks the point at which Employees finish their shifts by logging the time when they turn the truck's key in the ignition to drive back to the Shop.

52.     The software also tracks, *inter alia*, the location of each vehicle and the speed at which Employees are driving at any given time.

53.     The truck's software then exports this information to Defendants' computers located at the Shop.

54.     In short, Defendants are aware when Employees complete their final assignments for the day—as a result of receiving phone calls from the Employees or tracking their Company-issued trucks—and consistently clock Employees out at that time.

55.     As detailed below, Defendants do not compensate Employees for the time they spend driving back to the Shop at the end of a shift to return their trucks to the Shop.

**C.     Failure to Pay Minimum and Overtime Wages**

56.     Defendants engage in a common pattern and practice of deliberately denying Employees overtime wages.

57.     Defendants systematically deny Employees wages in several ways.

58.     First, Defendants maintain an intentional practice of requiring Employees to perform compensable work off-the-clock.

59.     For example, depending on the location of their assignments on a particular day, Employees spend anywhere from 30 to 90 minutes driving Defendants' trucks back to the Shop after completing their shifts.

60.     Employees are not paid any wages for this compensable, off-the-clock work.

61.     Given that Employees typically work 5 to 6 days per week, this results in the denial of approximately 2.5 to 9 hours[1] per week of overtime wages that should be paid to Employees at a rate of one and one-half times their regular rates of pay.

**D.    Unlawful Deductions for Traffic Violations**

62.     Defendants have acted willfully and deliberately in maintaining an intentional practice of improperly deducting wages from Employees.

63.     Specifically, Defendants deduct Employees' wages to cover some or all of the costs associated with parking and traffic tickets for which Employees are issued tickets while operating Defendants' trucks during working hours and for work purposes.  Defendants either deduct a portion or the entire amount of the parking or traffic ticket(s) from Employees' wages.

64.     These deductions from Employees' wages for expenses incurred by Employees, in carrying out duties assigned by Defendants, are unlawful.

**E.    Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

65.     The NYLL requires that Defendants provide Employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

---

[1] 30 minutes x 5 days a week = 2.5 hours; 90 minutes x 6 days a week = 9 hours

66.    Throughout the statutory period, Defendants have never provided any of the Employees with a Notice of Pay Rate.

67.    The NYLL also requires that Defendants furnish Employees with accurate wage statements with each payment of wages.

68.    Throughout the statutory period, Defendants have never furnished accurate wage statements to any of the Employees.

F.    **Plaintiff Dylan Hall**

    i.    **Background**

69.    Hall worked for Defendants as a Plumbing Mechanic from in or around mid-December 2017 through on or around July 16, 2021.

70.    In this role, Hall was responsible for, *inter alia*, installing, servicing, and repairing plumbing and heating units, such as pipes and central heating systems, in commercial and residential properties throughout New York City and Long Island.

71.    Each morning, Hall reported to the Shop to receive his assignments for the day and pick up necessary equipment.

72.    Hall and a Helper then drove a Company-issued truck to their designated job locations throughout New York City and Long Island.

73.    After Hall completed an assignment, he proceeded to his next scheduled job location until his shift ended.

74.    Defendants required Hall to return their truck to the Shop after the conclusion of his shift.

75.    Before driving the Company's truck back to the Shop, Defendants required Hall to call JCPH to notify the Company that he had completed his shift.

76.    Immediately thereafter—and before he returned the truck—Defendants clocked Hall out for the day.

77.    In the event Hall forgot to call Defendants, they still clocked him out at approximately the same time after confirming that his shift had ended through the tracking software installed in the truck.

78.    Hall spent 30 to 90 minutes each day driving Defendants' trucks back to the Shop, depending on the location of his last assignment.

79.    Upon Hall's hire, Defendants set his regular rate of pay at $18.00 per hour, with his overtime rate being $27.00 per hour.

80.    Starting in or around January 2019, Defendants increased Hall's regular rate of pay to $20.00 per hour, with his overtime rate being $30.00 per hour.

81.    Starting in or around January 2021, Defendants increased Hall's regular rate of pay to $22.00 per hour, with his overtime rate being $33.00 per hour.

82.    At all times, Hall agreed to be paid at these rates.

83.    From approximately mid-December 2017 through July 16, 2021, Hall typically worked five days per week, from approximately 6:00 a.m. until approximately 3:00 p.m. (including a one-hour unpaid lunch).

84.    Hall typically worked an additional 30 to 90 minutes at the end of his shift driving Defendants' truck back to the Shop.

85.    During this time, Hall consistently worked approximately 8.5 to 9.5 hours per day and approximately 42.5 to 47.5 hours per week.

86.    The services Hall rendered—namely, the installation, repair, and service of plumbing and heating units—was integral to Defendants' business of installing, repairing, and

servicing plumbing and heating units.

87.    Hall's relationship with Defendants was permanent insofar as he worked exclusively for Defendants throughout his employment.

88.    Defendants required Hall to use trucks, tools, and other equipment provided by Defendants.

89.    Defendants dictated Hall's rate of pay and hours worked.

90.    Defendants maintained control and oversight over the quality of Hall's work.

91.    While employed by Defendants, Hall had no opportunity for profit or loss, as he was paid the same hourly wage irrespective of the income generated by his work or Defendants' overall profits.

92.    Hall performed routine tasks that required little training.

93.    While employed by Defendants, Hall exercised little to no initiative, judgment, or foresight in open market competition with others to ensure his success, as he worked exclusively for Defendants and for a fixed hourly wage.

94.    For example, Hall did not independently advertise or market his services.

95.    On a similar note, Hall did not operate his own businesses independently of Defendants.

**ii.    Wage Violations**

96.    Hall routinely worked five days per week for approximately 42.5 to 47.5 hours every week.

97.    However, at all relevant times, Defendants failed to pay Hall for all of his hours worked as a result of their common policy and practice of requiring him to perform off-the-clock work.

98.     Indeed, Defendants paid Hall at below his established regular rates by not paying all of his earned wages and not paying him overtime for the 2.5 to 7.5 hours he typically spent driving back to the Shop each week.

99.     By way of example, from June 7, 2021 through June 11, 2021, Hall worked approximately 44.29 hours—including 4.29 hours spent driving Defendants' truck back to the Shop after completing his last assignment each day he worked.

100.     However, Defendants paid Hall only $880.00 for 40 hours worked.

101.     When accounting for all of his hours worked, Defendants paid Hall at an hourly rate of approximately $19.86 for this pay period,[2] which is lower than his agreed rate of $22.00 per hour.

102.     For this week alone, Hall should have been paid an additional $141.57 in overtime wages.[3]

103.     Unfortunately, Defendants' unlawful pay practices were not isolated to this week alone.

104.     By way of further example, from June 21, 2021 through June 25, 2021, Hall worked approximately 45 hours—including 5 hours he spent driving Defendants' truck back to the Shop after completing his last assignment each day he worked.

105.     However, Defendants again paid Hall only $880.00 for 40 hours worked.

106.     When accounting for all of his hours worked, Defendants paid Hall at an hourly rate of approximately $19.55 for this pay period,[4] which is lower than his agreed rate of $22.00 per hour.

---

[2] $880.00 / 44.29 hours = $19.86
[3] 44.29 hours - 40 hours = 4.29 hours; 4.29 x $33.00 = $141.57
[4] $880.00 / 45 hours = $19.55

107.    For this week alone, Defendants failed to pay Hall an additional $165.00 in overtime wages.[5]

108.    Further, on several occasions, Defendants deducted portions of Hall's paycheck, citing parking and traffic tickets Hall incurred while driving his Company-issued truck during working hours and for work purposes.

109.    For example, in or around mid-May 2021, Hall incurred a parking ticket in the amount of $100.00.

110.    For the next several weeks, Defendants deducted wages from Hall's weekly paycheck until he had paid off the balance of the fine imposed by the parking ticket.

111.    Additionally, Defendants failed to furnish Hall with accurate wage statements showing all of his hours worked.

112.    Defendants also failed to issue a Notice of Pay Rate to Hall at any time during his employment, let alone each time his rate of pay was set or changed.

113.    Throughout the relevant time period, Hall had conversations with other Employees who confirmed that they were paid below their agreed upon hourly rates, denied compensation for all hours worked, denied overtime wages, and had parking and traffic tickets improperly deducted from their wages.

114.    Like Hall, Defendants issued these Employees inaccurate wage statements that inaccurately reflected their hours worked.

115.    These employees also confirmed that Defendants failed to provide them with Notices of Pay Rate.

---

[5] 45 hours - 40 hours = 5 hours; 5 x $33.00 = $165.00

## FLSA COLLECTIVE ACTION ALLEGATIONS

116.    Plaintiff brings this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

117.    Plaintiff seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of himself and all other Employees who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

118.    At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of unlawfully requiring them to perform off-the-clock work for which they received no overtime compensation.

119.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

120.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

121.    As a result of Defendants' conduct, they are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

122.    While the exact number of the FLSA Collective is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are

approximately 100 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

123.    Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

124.    Accordingly, Defendants should be required to provide Plaintiff with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

125.    Plaintiff brings this action, in part, as a class action under the NYLL and applicable regulations thereunder.

### A.    Class Definition

126.    Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Employees who have been employed by Defendants at any time during the full statute of limitations period (the "NYLL Class").

127.    Plaintiff alleges, on behalf of himself and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay Plaintiff and the NYLL Class all wages owed, including those owed in accordance with their agreed terms of employment; (ii) failing to pay Plaintiff and the NYLL Class at one and one-half times their regular rate of pay for time spent performing off-the-clock work; (iii) improperly deducting wages; (iv) failing to provide Notices of Pay Rate; and (v) failing to furnish accurate wage statements.

128.    Plaintiff and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

129.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

130.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    Requirements of Rule 23(a)**

**i.    Numerosity and Impracticability of Joinder**

131.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

132.    While the exact number of the members of the NYLL Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 100 members of the NYLL Class.

133.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

134.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

135.    Indeed, there are few, if any, purely individual issues in this action.

136.    The questions of law and fact that are common to Plaintiff and the NYLL Class include, without limitation:

(a)    Whether Defendants failed to pay Plaintiff and the NYLL Class all wages owed to them;

(b)    Whether Defendants failed to pay Plaintiff and the NYLL Class all overtime wages owed to them;

(c)    Whether Defendants made improper deductions from wages owed to Plaintiff and the NYLL Class;

(d)    Whether Defendants failed to provide Plaintiff and the NYLL Class with Notices of Pay Rate;

(e)    Whether Defendants failed to furnish accurate wage statements to Plaintiff and the NYLL Class; and

(f)    Whether Plaintiff and the NYLL Class are entitled to liquidated damages and injunctive relief.

137.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

138.    Plaintiff's claims are typical of the claims of the members of the NYLL Class he seeks to represent.

139.    Plaintiff and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

140.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Employees generally, and of the NYLL Class specifically.

141.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.    Adequacy of Representation**

142.    Plaintiff will fairly and adequately protect the interests of the NYLL Class because his interests are coextensive and aligned with those of the members of the NYLL Class.

143.    Plaintiff has no interests adverse to the NYLL Class he seeks to represent and has retained competent and experienced counsel.

144.    Plaintiff is willing and able to represent the NYLL Class as fairly and vigorously as he pursues his similar individual claims.

145.    Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

146.    The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.    Requirements of Rule 23(b)(1)**

147.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

148.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYLL Class, and Defendants.

149.    By filing this Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

150.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

### D.   Requirements of Rule 23(b)(2)

151.   Defendants acted on grounds, described herein, generally applicable to Plaintiff and the NYLL Class by denying Plaintiff and the NYLL Class all wages owed, overtime wages, making improper deductions, and failing to furnish Notices of Pay Rate and accurate wage statements.

152.   These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYLL Class as a whole.

153.   Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, overtime wages, all wages owed, Notices of Pay Rate, and accurate wage statements.

154.   Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

155.   Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

### E.   Requirements of Rule 23(b)(3)

156.   The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

157.   A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYLL Class.

158.   The cost of proving Defendants' pattern and practice of denying all wages owed makes it impractical for the members of the NYLL Class to pursue their claims individually.

159.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Employees during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiff and the FLSA Collective)*

160.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

161.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

162.    The FLSA requires covered employers, including Defendants, to compensate Employees at a rate not less than one and one-half times their regular rate of pay and at a rate not less than one and one-half times the federal minimum wage for all hours worked in excess of 40 hours in a workweek.

163.    Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

164.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for time spent performing off-the-clock work in excess of 40 hours in a workweek.

165.    As a result of Defendants' failure to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess

of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

166.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

167.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
***(On Behalf of Plaintiff and the NYLL Class)***

168.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

169.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

170.    The NYLL requires covered employers, including Defendants, to compensate Employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

171.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

172.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for time spent performing off-the-clock work in excess of 40 hours in a workweek.

173.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

174.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

175.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: UNLAWFUL DEDUCTIONS**
(*On Behalf of Plaintiff and the NYLL Class*)

176.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

177.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

178.    The NYLL prohibits covered employers, including Defendants, from making deductions from Employees' wages, except those expressly authorized in writing by the employee and for the benefit of the employee, those in relation to recovery of an overpayment of wages

where such payment is due to a mathematical or other clerical error by the employer, or those in relation to a repayment of advances of salary or wages made by the employer to the employee.

179.    Plaintiff and the NYLL Class were not exempt from the requirement that their employer not make unlawful deductions from their wages.

180.    By the actions described above, Defendants made unlawful deductions from Plaintiff's and the NYLL Class's wages.

181.    As a result of Defendants' unlawful deductions from Plaintiff's and the NYLL Class's wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

182.    Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

183.    As a result of Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover damages to the greatest extent permitted under the law.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
(***On Behalf of Plaintiff and the NYLL Class***)

184.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

185.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

186.    The NYLL requires covered employers, including Defendants, to compensate Plaintiff and the NYLL Class at their established regular rates of pay for all hours worked in a workweek.

187.    Plaintiff and the NYLL Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

188.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the NYLL Class at their established regular rates of pay for all hours worked.

189.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

190.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

191.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE
**(*On Behalf of Plaintiff and the NYLL Class*)**

192.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

193.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

194.    The NYLL requires covered employers, including Defendants, to provide Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

195.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

196.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the NYLL Class.

197.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

198.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the NYLL Class in accordance with the NYLL.

199.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: ACCURATE WAGE STATEMENTS
### (*On Behalf of Plaintiff and the NYLL Class*)

200.    Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

201.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

202.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."  NYLL § 195(3).

203.    Plaintiff and the NYLL Class were not exempt from the requirement that Defendants provide them with accurate wage statements.

204.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiff and the NYLL Class.

205.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

206.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiff and the NYLL Class in accordance with the NYLL.

207.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State laws;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.    Designate Plaintiff as the representative of the FLSA Collective, and his counsel of record as class counsel;

F.    Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Designate Plaintiff as the representative of the NYLL Class, and his counsel of record as class counsel;

H.      Determine the damages sustained by Plaintiff and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiff and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

I.      Award Plaintiff, the FLSA Collective, and/or the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

J.      Award Plaintiff, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

K.      Grant Plaintiff, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the FLSA Collective, and the NYLL Class, hereby demands a trial by jury on all issues of fact and damages.

Dated: September 29, 2021          **FARUQI & FARUQI, LLP**
       New York, New York

By: _/s/ Innessa M. Huot_____
    Innessa Melamed Huot
    Alex J. Hartzband
    Camilo M. Burr

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com

cburr@faruqilaw.com

*Attorneys for Plaintiff, the Proposed FLSA*
*Collective, and the Proposed NYLL Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DYLAN HALL, on behalf of himself and others similarly situated, | Civil Case No.: |
| Plaintiff, | **CONSENT TO SUE** |
| v. | |
| J. CAIAZZO PLUMBING & HEATING CORP. and MICHAEL CAIAZZO, in his individual and professional capacities, | |
| Defendants. | |

I, Dylan Hall, was employed by Defendants in the last three years and am the named Plaintiff in the above-captioned action, *Hall, et al. v. J. Caiazzo Plumbing & Heating Corp., et al.*, pending in the United States Court for the Eastern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Dylan Hall _____

Signature: _____    Date: 9/24/2021 | 5:59 PM EDT _____