F&F LLP
FARUQI & FARUQI

NEW YORK CALIFORNIA GEORGIA PENNSYLVANIA

**Camilo M. Burr**
cburr@faruqilaw.com

September 26, 2022

**VIA ECF**

The Honorable Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 324N
Brooklyn, New York 11201

Re: *Hall v. J. Caiazzo Plumbing & Heating Corp. et al.,* No. 1:21-cv-05416-ENV-SJB

Dear Judge Bulsara:

We represent Plaintiff Dylan Hall ("Hall") and opt-in plaintiffs Azimba Wilson, Maurice Robertson, Curtis Lewis, David McIntyre, and Sherwin Rogers (collectively, "Plaintiffs") in the above-referenced matter and write, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), to respectfully request approval of the parties' settlement of this matter (the "Settlement"), as set forth in the parties' Settlement Agreement and Release, as well as Plaintiffs' counsel's reasonable attorneys' fees and costs. *See* Declaration of Camilo M. Burr ("Burr Decl."), Exhibit A (the "Agreement").[1] If approved, the Settlement will fully and finally resolve Plaintiffs' claims in this matter.

As detailed below, the Settlement is reasonable under each of the five *Wolinsky* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

## I. PLAINTIFFS' ALLEGATIONS

Defendants own and operate a plumbing and heating company in Brooklyn, New York and employ Plumbing Mechanics and Helpers (together, "Employees") who service plumbing and heating units for commercial and residential properties throughout the five boroughs of New York City, as well as Long Island. *See* ECF No. 1 ("Complaint") ¶¶ 1, 16, 21, 26-27.

Plaintiffs allege that each morning, Employees report to Defendants' Shop to receive their assignments for the day and to pick up necessary equipment. *Id.* ¶¶ 45-46, 71. It was claimed that once given their assignments, Employees drive Defendants' Company-owned trucks to their

[1] Unless otherwise noted, all exhibits to the Burr Decl. are hereinafter cited as "Ex. __."



designated job location throughout New York City and Long Island. *Id*. ¶¶ 29, 72. The Complaint claims that after Employees complete an assignment, they proceed to the next scheduled job location until their shift ends. *Id*. ¶¶ 46, 73. As well, Plaintiffs aver that when Employees complete their last assignment of the day, Defendants require them to return the Company's trucks back to the Shop. *Id*. ¶¶ 48, 74. Plaintiffs plead that throughout the statutory period, Defendants scheduled Employees to work Monday through Saturday, either from 6:00 a.m. to 3:00 p.m. or 7:00 a.m. to 4:00 p.m. *Id*. ¶ 31.

Plaintiffs also claimed that throughout the statutory period, Defendants have utilized a timekeeping system in which Employees clock in and out to track the number of hours they work each week. *Id*. ¶ 44. According to Plaintiffs, each morning, Employees arrive at the Shop and clock in, as reflected on the timecards located in the Shop. *Id*. ¶ 45. Then, once they clock in, Employees receive their assignments from Defendants and then drive Defendants' trucks to the locations of their various assignments. *Id*. ¶¶ 46, 71-72. Plaintiffs further state that after Employees finish their shifts, Defendants require them to return the Company's trucks back to the Shop to drop off materials, tools, and equipment (or pick up the same in the event Employees are required to work a shift later that evening or early the next morning). *Id*. ¶¶ 48, 74.

The Complaint also alleges that before returning to the Shop, Defendants require Employees to call the Shop to notify Defendants that they have completed their shifts. Complaint ¶¶ 49, 75. Plaintiffs contend that immediately thereafter—and before returning the trucks to the Shop—Defendants manually clock Employees out for the day on the timecards located in the Shop. *Id*. ¶¶ 49, 76. Plaintiffs further allege that if an Employee fails to notify Defendants when their shift has ended, Defendants are nevertheless able to determine when Employees completed their shifts based on GPS tracking devices installed in each truck. *Id*. ¶¶ 50-54, 77. The GPS system also allegedly tracked the location of each truck during the day. *Id*. ¶¶ 52, 77.

Plaintiffs claimed that depending on the location of Employees' assignments on a particular day, Employees typically spend anywhere from 15 minutes to 150 minutes driving Defendants' trucks back to the Shop after completing their shifts. Burr Decl. ¶ 13. For example, hypothetically, Employees who complete their last assignment near the Shop in Brooklyn may require only 15 minutes to return Defendants' truck. *Id*. ¶ 15. However, if an Employee's last assignment was located in the Bronx, Staten Island, or Long Island, then the Employee might allegedly spend anywhere from 90 minutes to 150 minutes driving Defendants' trucks back to the Shop. *Id*. ¶ 16. Based on this theory, Plaintiffs claimed that anywhere from 1.25 to 15 hours per week of minimum and overtime wages that Plaintiffs allege are not, but should be, paid to Employees as compensable, off-the-clock work. *Id*. ¶ 17.

Plaintiffs also contend Defendants improperly deduct parking and traffic tickets from Employees' wages if an Employee received a ticket while operating Defendants' trucks during working hours and for work purposes. Complaint ¶¶ 62-64.

For their part, Defendants vigorously dispute all of the allegations in the Complaint and all claims made by the Plaintiffs. As far as Defendants are concerned, Plaintiffs were compensated appropriately for their travel time and for all other work performed. As well, Defendants maintained that there was no improper deduction of wages.

## II. PROCEDURAL HISTORY

On September 29, 2021, Hall initiated this action by filing a Complaint alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the New York Labor Law ("NYLL") by failing to pay him minimum and overtime wages, improperly deducting parking and traffic tickets from his wages, and failing to furnish him with Notices of Pay Rate and accurate wage statements. Complaint ¶¶ 2, 7-8, 56-68, 160-207; *see* Burr Decl. ¶ 10. On December 10, 2021, Defendants filed their Answer, in which they denied all liability and asserted multiple affirmative defenses. *See* ECF No. 14; Burr Decl. ¶ 15. On January 14, 2022, the parties filed a stipulation and order seeking to conditionally certify the case as a collective action which was granted by Your Honor on January 18, 2022. *See* ECF Nos. 18-19; Burr Decl. ¶ 16. Since then, five opt-in plaintiffs joined the lawsuit. *See* ECF Nos. 21-22, 24; Burr Decl. ¶ 17.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in a thorough investigation and voluminous discovery relating to Plaintiffs' claims and Defendants' defenses, including payroll documents, GPS records, time records, personnel records, and text messages. Burr Decl. ¶ 19. The parties conferred numerous times as to the strengths, weaknesses, and merits of each party's claims and defenses and exchanged case law supporting their respective positions. *Id.* ¶ 21. Based on the discovery produced by Defendants and a thorough investigation, Plaintiffs' counsel calculated Plaintiffs' damages to be $133,447.01. *Id.* ¶ 22.

On July 12, 2022, the parties participated in a full day mediation before Barry J. Peek, Esq., an experienced and well-respected mediator with the United States District Court for the Eastern District of New York's Mediation Panel. *Id.* ¶ 23. With the assistance of Mr. Peek, the parties were able to resolve Plaintiffs' claims for a sum of $110,000 on the terms set forth in the Agreement now before this Court. *Id.* ¶ 24; *see also id*. at Ex. A.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND CONSISTENT WITH *CHEEKS*

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for an 82% recovery of all their best-case scenario damages for unpaid wages, including liquidated damages, prejudgment interest, and statutory damages for both Notice of Pay Rate and wage



statement violations—even assuming all factual and legal assumptions are made in Plaintiffs' favor. Burr Decl. ¶ 25. Indeed, this assumes that Plaintiffs prevail on all their claims and Defendants lose on all their defenses. *Id*. ¶ 26.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances, including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks* – specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015). The Settlement satisfies the five *Wolinksky* factors and does not conflict with the *Cheeks* admonitions.

**A. <u>Plaintiffs Will Receive a Significant Portion of Their Maximum Possible Recovery Under the Settlement</u>**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as the Settlement provides Plaintiffs with a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiffs, the Settlement results in Plaintiffs receiving 82% of all possible damages—including economic damages, liquidated damages, prejudgment interest, and statutory damages (for the notice violations). Burr Decl. ¶ 27.

This recovery reflects a reasonable compromise and far exceeds recoveries recently approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wang v. Masago Neo Asian Inc.*, No. 14-CV-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval of settlement where settlement provided a 52% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354-LEK-ATB, DE 104-1 at 14, 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Surdu v. Madison Glob., LLC*, No. 15-CV-6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding settlement reasonable where class members receive approximately 50% of economic damages, "in light of the risks of litigation[.]").

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue. Burr Decl. ¶ 28. Plaintiffs' counsel conducted extensive interviews with Plaintiffs and reviewed voluminous documents obtained from both Plaintiffs and Defendants, including payroll documents, GPS records, time records, personnel records, and text messages. *Id.* ¶ 29. Based on this analysis and investigation, Plaintiffs' counsel analyzed the strengths and weaknesses of Plaintiffs' claims and the range of possible recoveries. *Id.* ¶ 30.

Here, Plaintiffs allege that Defendants failed to pay Plaintiffs for the 15 to 150 minutes they spent driving Defendants' trucks back to the Shop after completing their shifts each day resulting in the denial of minimum and overtime wages. Complaint ¶¶ 2, 56-61, 164, 172. Plaintiffs also allege that Defendants improperly deducted parking and traffic tickets from their wages. *Id.* ¶¶ 7, 62-64, 180. Lastly, Plaintiffs allege that Defendants never furnished them with Notices of Pay Rate and accurate wage statements during the statutory period. *Id.* ¶¶ 8, 65-68, 196, 204.

Defendants contest the validity of Plaintiffs' contentions, their claimed damages, and the assumptions underlying such claims and calculations and Plaintiffs dispute the defenses and assumptions raised and relied upon by Defendants. Burr Decl. ¶ 31. First, Defendants claim Plaintiffs' travel time is not compensable work under the FLSA and should not be counted towards Defendants' overtime obligations. *Id.* ¶ 32. Further, Defendants dispute the time Plaintiffs claim to have spent driving back to the Shop at the end of each shift. *Id.* ¶ 33.

The parties vehemently dispute these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective positions. *Id.* ¶ 34. The parties agree that these issues involve fact intensive inquiries regarding the nature of Plaintiffs' work. *Id.* ¶ 35. Among other things, these inquiries require an assessment of Plaintiffs' work, Plaintiffs' testimony as to the time spent driving back to the Shop each day and how much they were paid. *Id.* ¶ 36. The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id.* ¶ 37. Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial. *Id.* ¶ 38.

Making all favorable assumptions to Plaintiffs' benefit, Plaintiffs assert that their damages for all unpaid wage claims, including minimum wages, overtime wages, including deductions of traffic tickets, liquidated damages, prejudgment interest, and statutory damages for notice violations amount to $133,347.01. *Id.* ¶ 39.

| **Plaintiffs' Total Wage Damages** | |
|---|---|
| Unpaid Minimum and Overtime | $36,843.56 |
| Unlawful Deductions | $2,391.00 |
| Liquidated Damages | $39,234.56 |
| Notice of Pay Rate | $20,525.00 |
| Earning Statements Violation | $25,750.00 |
| Prejudgment Interest | $8,602.90 |
| **Total Wage Claim Damages** | **$133,347.01** |

This Settlement of $110,000.00 provides Plaintiffs with an 82% recovery of all such best-case scenario damages, including minimum and overtime wages, deductions from their wages, liquidated damages, prejudgment interest, and statutory damages for notice violations. *Id.* ¶ 25.


Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on all, or at least some, of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is a remarkable result for Plaintiffs.  *Id.* ¶ 40.

**B.   By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because the parties will avoid the significant expense of continued discovery, motion practice, and the risk of a lengthy, fact-specific trial. Courts have repeatedly recognized that cases where a plaintiff must prove that they engaged in overtime work is both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risk in establishing liability for wage claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid . . . wages[.]").

Additionally, the burden will be especially great because the parties maintain different assessments concerning the amount of time Plaintiffs spent driving from their last job assignment to Defendants' Shop at the end of each shift.  Burr Decl. ¶ 41.  Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"). Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*.  Burr Decl. ¶ 42.

**C.   The Settlement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There is No Possibility of Fraud or Collusion**

The fourth and fifth factors—whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also support a conclusion that the Settlement is fair and reasonable.  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in wage-and-hour and employment disputes.  Burr Decl. ¶ 43; Ex. B (Faruqi & Faruqi, LLP firm résumé).  Counsel for



the parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Burr Decl. ¶ 44.

Significantly, the parties participated in a mediation session with the well-respected mediator Barry J. Peek, Esq. *Id.* ¶ 46. The case history and litigation process leave no doubt that counsel for the parties negotiated at arm's-length and that the possibility of fraud or collusion is non-existent. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement). Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain any confidentiality provision and allows Plaintiff to openly and freely discuss his employment experiences, his lawsuit, his claims, and this Settlement with anyone. *See generally* Ex. A.

Likewise, the Settlement contains a release limited to the FLSA and NYLL, and wage and hour related common law claims. *See* Ex. A § 3. The parties are mindful that courts have expressed concern over widespread, sweeping releases of claims. *See, e.g., Cheeks*, 796 F.3d at 206. However, this release is not overly broad, as evidenced by the approval of settlement agreements with similar language by courts within the Second Circuit. *See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (release was fair and reasonable since it does not release any future claims). The release is further justified because Plaintiffs have raised claims not only under the FLSA, but also under the NYLL. Accordingly, a broader release than in a typical FLSA settlement is warranted.

In sum, this Settlement provides for a remarkable recovery for Plaintiffs, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision or overbroad release, is

exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

## IV. PLAINTIFFS' PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE[2]

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $35,397.23 which is one-third (33.33%) of the Settlement Amount after costs are deducted. Burr Decl. ¶ 48; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 28% of Plaintiffs' counsel's lodestar of $126,142.50 in this case and is exceedingly fair and reasonable under all applicable laws. Burr Decl. ¶ 49.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g., Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Abrar v. 7-Eleven, Inc.*, No. 14-cv-6315 (ADS) (AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016) (approving attorneys' fees for one third of the total settlement as fair and reasonable and collecting cases).

The requested fees are further justified by the circumstances of this action. Plaintiffs' counsel was retained on a purely contingency fee basis and, as a result, has advanced all costs and shouldered all the risks in this litigation. Burr Decl. ¶ 50. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims. *Id.* ¶ 51.

Awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to relatively small wage claims like Plaintiffs. *See Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ("[D]ue to the relatively small settlement involved here, the requested fee award" of $50,000 out of a $125,000 settlement fund, or 40% of the settlement, "is necessary to compensate counsel adequately."). Put differently, awarding "fees sufficient to compensate counsel for at least a substantial portion of the work it has performed" ensures that counsel will continue to "be willing to take on future small-scale [ ] actions such as this." *Id.*; *see also In re Indep. Energy Holdings*

---

[2] For the purposes of settlement only, Defendants do not challenge this fee application.


*PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of September 12, 2022, Plaintiffs' counsel has billed 325.70 hours on this matter, amounting to $126,142.50 in fees if calculated pursuant to the lodestar. *See* Burr Decl. ¶ 52; Ex. C (contemporaneous billing records). The lodestar is calculated based on comparable hourly rates for Plaintiffs' counsel that have been approved by other courts in the Second Circuit and across the country. Burr Decl. ¶ 53; *see, e.g., Alam v. O&S Gen. Contractors Corp.*, No. 18-CV-2069 (LDH) (JO), ECF Nos. 19-4 at 7; 20 (E.D.N.Y. Aug. 17, 2018) (approving rates of $600 for Ms. Huot, $450 for Mr. Hartzband, and $310 for paralegal); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) ($875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, and $315-$245 for paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519- BCW, ECF Nos. 140-1; 155 (W.D. Mo. July 7, 2017) ($550 for Ms. Huot and $375- $310 for paralegals*); Run Them Sweet, LLC v. CPA Global, LTD, et al.*, No. 1:16-cv-1347, ECF Nos. 108- 4 ¶ 4; 114 (E.D. Va. Oct. 6, 2017) ($550 for Ms. Huot); *see also, Porrini v. McRizz, LLC, et al.,* No. 2:19-cv-03979(ARR)(RML), ECF Nos. 53-1 ¶ 61; 55 (E.D.N.Y. Jul 10, 2019), *Goins v. BB&T Securities, LLC, et al.*, No. 1:20-cv-09891(PGG)(JLC), ECF Nos. 37-1 ¶ 80; 38 (S.D.N.Y Nov. 24, 2020); *Zigos v. Mayshad Choice Inc., et al.*, No. 1:20- cv-09203- ALC, ECF Nos. 26 ¶ 55; 28 (S.D.N.Y. May 21, 2021); *Betesh v. Onia, LLC, et al.*, No. 20 Civ. 9770 (AT), ECF Nos. 31-1 ¶ 42; 35 (S.D.N.Y. Oct. 12, 2021); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT, ECF No. 28 ¶ 42 (E.D.N.Y. Mar. 30, 2021); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al.*, No. 1:20-cv-02481-RWL, ECF Nos. 74-1 ¶ 53; 76 (S.D.N.Y. Feb. 25, 2021); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. CV-18-1397 (ST), ECF Nos. 75 ¶ 67; 77 (E.D.N.Y. Feb. 4, 2021); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 20 CV 726 (LB), ECF Nos. 23 ¶ 51; 25 (E.D.N.Y. Dec. 23, 2020); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18- CV-26 (VSB), ECF Nos. 97-1 ¶ 60; 99 (S.D.N.Y. May 6, 2020); *Pazdniakou v. CoolTech Mech. Corp.*, et al., No. 1:19-cv-5434 (SJB), ECF Nos. 18 ¶ 49; 21 (E.D.N.Y. Mar. 23, 2020); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4 ¶ 3; 109 ¶¶ 12-13, 18 (N.D.N.Y. Nov. 15, 2018); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS, ECF No. 129-1 ¶ 31 (E.D.N.Y. May 8, 2019); *Georgiev, et al. v. Shapiro, et al.*, No. 19 CIVIL 122 (JPO), ECF Nos. 41 ¶ 24; 47 (S.D.N.Y. Oct. 2, 2019); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF Nos. 71 ¶ 26; 80 ¶ 7-8 (N.Y. Sup. Queens Cty. June 24, 2020); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, NYSCEF Nos. 57; 108 (N.Y. Sup. N.Y. Cty. June 11, 2020).





Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Auth. of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $550 per hour for Ms. Huot, $500 per hour for Mr. Hartzband, $375 per hour for Mr. Crabill, $375 per hour for Mr. Burr, $350 per hour for Ms. Stanley, and $150 to $175 per hour for paralegals. Burr Decl. ¶ 54. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* ¶ 55. Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.* ¶ 56.

The requested fee award of $35,397.23 represents a negative multiplier of 0.28 times of Plaintiffs' counsel's lodestar of $126,142.50. Indeed, the requested fee award is only 28% of Plaintiffs' counsel's actual lodestar. *Id*. Put differently, Plaintiffs request approval of attorneys' fees amounting to less than a third of the market value of the hourly work that has been invested in this action to bring it to resolution. *Id*. As such, the requested attorneys' fees are reasonable.

Further, Plaintiffs request the Court approve reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Plaintiffs' counsel has incurred $3,797.69 in actual costs and expenses for filing fees, service costs, mediation expenses, discovery related costs, and postage. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Plaintiffs' request for approval of $35,397.23 in attorneys' fees and $3,797.69 in unreimbursed expenses, for a total of $39,194.92 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

## V. CONCLUSION

Accordingly, the parties jointly request that the Court approve of the Settlement, So Order the Stipulation of Dismissal with Prejudice attached to the Agreement, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.



The Honorable Sanket J. Bulsara
September 26, 2022
Page 11

Respectfully submitted,

Camilo M. Burr

Cc: Counsel of Record (*via* ECF)

685 Third Avenue New York, NY 10017 Phone: 212.983.9330 Fax: 212.983.9331 EmployeeRightsCounsel.com FaruqiLaw.com